UNITED STATES DISTRICT COURT
District of New Jersey

CHAMBERS OF
JOSE L. LINARES
JUDGE

MARTIN LUTHER KING JR.
FEDERAL BUILDING & U.S. COURTHOUSE
50 WALNUT ST., ROOM 5054
P.O. Box 999
Newark, NJ 07101-0999
973-645-6042

**NOT FOR PUBLICATION**

**LETTER OPINION**

March 9, 2009

Joseph C. O'Keefe, Esq.
Proskauer Rose, LLP
One Newark Center
Newark, NJ 07102-5211

Franklyn C. Steinberg, III, Esq.
Steinberg Law Offices
98 Grove Street
Somerville, NJ 08876

Samuel J. Halpern, Esq.
347 Mt. Pleasant Avenue, Suite 203
West Orange, NJ 07052

Richard Knight Muser, Esq.
Clifton, Budd & DeMaria, Esqs.
420 Lexington Avenue
New York, NY 10170

Re:     Anastasia v. Cushman & Wakefield, et al.
        Civil Action No.: 08-1880 (JLL)

Dear Counsel:

This matter comes before the Court by way of Defendant Bruce Cobb's motion to dismiss Count III of Plaintiff's Amended Complaint [CM/ECF Docket Entry No. 18]. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, Defendant's motion to

dismiss Plaintiff's intentional infliction of emotional distress claim is **granted.** Plaintiff has thirty (30) days in which to file an amended complaint to cure the pleading deficiencies in this claim.

I.    **Relevant Factual and Procedural Background**[1]

In early 2001, Plaintiff was interviewed by Defendant Cobb ("Cobb" or "Defendant"), an employee of Citigroup, for the position of administrator at various commercial buildings where Citigroup leased space in Hudson County, New Jersey. (Am. Compl., ¶ 7). Shortly thereafter, Cobb recommended that Cushman & Wakefield, a property management company, hire Plaintiff so that she could work with Defendant Cobb as administrator for the Citigroup buildings. (Id.). Plaintiff was hired on June 4, 2001 and was assigned to work for Cobb at the Citigroup offices located at 1919 Park Avenue in Weehawken, New Jersey. (Id., ¶ 8). The parties proceeded to work together in this capacity for the next five years. (Id., ¶¶ 11, 12).

On April 18, 2006, Cobb asked Plaintiff to join him for lunch. (Id., ¶ 11). At lunch, they discussed business and personal matters, including Plaintiff's love interest, Ted Hayden, who lived in Minnesota. (Id.). As Plaintiff discussed her future plans with Ted, including a potential move to Minnesota, Cobb appeared to lose his appetite. (Id.). At the end of the meal, Cobb broke down into tears and confessed to Plaintiff that he had been fantasizing about her for the past five years and had hoped to have a romantic relationship with her. (Id.). Cobb's revelation was shocking to Plaintiff inasmuch as Cobb was a married man who had been her mentor and friend for some time. (Id., ¶ 12).
On their way back to the office, Cobb began to cry once again in the car. (Id., ¶ 12). He explained that he had hoped that Plaintiff felt the same way he did. (Id.). Eventually, Cobb apologized for his behavior and assured Plaintiff that she was a wonderful and caring person. (Id.). Plaintiff requested that they put the entire "episode" behind them, and Cobb agreed. (Id.).

On the following day, Plaintiff tried to act as though nothing had happened between them. (Id.). Cobb, on the other hand, continued to do everything possible to interact with Plaintiff. (Id., ¶ 13). For instance, Cobb began staying at the office until Plaintiff would leave. (Id., ¶¶ 12, 13). Cobb also commented on a picture of Plaintiff and her boyfriend which she had on her desktop, and told Plaintiff that although the picture used to bother him, it no longer did. (Id., ¶ 13). Cobb also asked Plaintiff for a copy of the picture. (Id.). On another occasion, Cobb asked Plaintiff for help in locating a box of coffee. (Id.). Even though Plaintiff told him exactly where it was, he nonetheless claimed that he could not find it, thereby requiring Plaintiff to get up from her desk to show him where it was. (Id.). He again thanked Plaintiff for being such a " wonderful" person. (Id.). As Plaintiff drove home that night, she became upset about the events of the past two days. (Id.). Plaintiff could not sleep that evening and sent Cobb an e-mail asking him not to contact her. (Id.). Cobb disregarded Plaintiff's request, and continued to contact Plaintiff over the course of the following week, via e-mail, text messages and telephone messages. (Id., ¶ 14).

On April 21, 2006, Plaintiff contacted a senior property manager for Cushman &

Wakefield and informed him of what had happened. (Id., ¶ 15). She advised him that she could work under those circumstances. (Id.). On April 26, 2006, Plaintiff was contacted by the Human Resources Director of Cushman & Wakefield who apologized for the events of the prior week, and stated that she would attempt to relocate Plaintiff to another office. (Id., ¶ 16). To date, Plaintiff has not been relocated. (Id.). Plaintiff continued to receive salary and benefits through June 30, 2006. (Id., ¶ 17).

In light of the foregoing, Plaintiff commenced the instant lawsuit against Cushman & Wakefield, Citigroup, Citigroup Realty Services and Bruce Cobb.[2] Plaintiff's Amended Complaint sets forth claims for (1) hostile work environment under the New Jersey Law Against Discrimination, (2) constructive discharge, (3) intentional infliction of emotional distress, and (4) negligent hiring. Count III, the intentional infliction of emotional distress claim, is directed at Defendant Cobb. This motion followed.

## II.     Legal Standard

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). Moreover, "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007). Thus, courts are not required to credit bald assertions or legal conclusions draped in the guise of factual allegations. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir. 1997); see also In re Nice Sys., Ltd. Sec. Litig., 135 F.Supp.2d 551, 565 (D.N.J. 2001). In evaluating a plaintiff's claims under this standard, a court may generally look only to the facts alleged in the complaint and any accompanying attachments and may not look at the record. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1251, 1261 (3d Cir. 1994).

## III.    Discussion

The sole claim at issue is Plaintiff's intentional infliction of emotional distress claim. To state a claim for intentional infliction of emotional distress under New Jersey law,[3] Plaintiff must show that (1) Defendant acted intentionally or recklessly, (2) the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community, (3) Defendant's conduct is the proximate cause of Plaintiff's emotional distress, and (4) the distress was so severe that no reasonable person could be expected to endure it. See Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366-67, 544 A.2d 857 (1988) (citing Restatement (Second) of Torts § 46)). Defendant argues that Plaintiff's claim fails inasmuch as it fails to overcome the first, second and fourth prongs of the Buckley test.

1. Prong One

Initially, Plaintiff must allege that Defendant acted intentionally or recklessly. See, e.g., Buckley, 111 N.J. at 366. "For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." Id. According to the Defendant, the Amended Complaint fails to allege that Cobb professed his love for the Plaintiff with an intent to hurt her or otherwise induce severe emotional distress. (Def. Br. at 14). In fact, according to the Defendant, the Amended Complaint alleges the very opposite – namely, that Cobb was motivated to confess his romantic feelings for Plaintiff by the hope that the feelings were mutual. (Id. (citing Am. Compl., ¶ 12) (alleging that Defendant began to cry for a second time, after initially professing his love for Plaintiff, and stated that "he [had] hoped that plaintiff felt the same way he did.").

Plaintiff does not dispute this. Instead, Plaintiff argues that "Mr. Cobb knew or had to know . . . that his actions were emotionally distressing to plaintiff." (Pl. Opp'n Br. at 3). Even if such a conclusory allegation were sufficient to raise her right to relief above the speculative level, no such allegation is contained in the Amended Complaint. In this Circuit, it is well-settled that a plaintiff may not amend the complaint through statements contained in a brief filed in opposition to a motion to dismiss. See Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988); Shoenfeld Asset Mgmt. LLC v. Cendant Corp., 142 F.Supp.2d 589, 613-14 (D.N.J. 2001). As a result, any such allegations – stated for the first time in Plaintiff's opposition brief – will not be considered by the Court at this time. Although Count III could be dismissed on this basis alone, for the sake of completeness, the Court will proceed in its analysis of prongs two and four.

2. Prong Two

With respect to prong two, which requires that the conduct at issue be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency,"[4] Defendant argues that Cobb's actions, that is, his profession of love for and subsequent attempts at communication with the Plaintiff, were not sufficiently "outrageous" or "utterly intolerable." (Def. Br. at 12-13). Based on the reasons that follow, the Court agrees that the allegations set forth in the Amended Complaint – as currently pled – do not rise to the level of outrageousness necessary to state a claim for the tort of intentional infliction of emotional distress.[5]

New Jersey courts have only found this "elevated threshold" to be satisfied in "extreme cases." See Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 23 (App. Div. 2001). For instance, as explained by the Appellate Division:

> Conduct has been found sufficiently outrageous to support a claim for intentional infliction of emotional distress when a landlord failed to provide central heating, running water and reasonable security in a rent controlled building in an effort to induce the tenants to vacate; when a doctor allegedly told a child's parents that he was " suffering from a rare disease which may be cancerous knowing

>that the child has nothing more than a mildly infected appendix;" and when an employer referred to an African American employee as a "jungle bunny." On the other hand, our courts have rejected intentional infliction of emotional distress claims based on an employer's alleged denial of promotions and ultimate termination of an employee based on his age; a police department's demand that an officer undergo a "fitness for duty" examination, which included drug testing and psychological evaluation, as a condition of returning to work after a domestic violence incident; and a wife's eleven year adulterous affair with her boss.

Griffin, 337 N.J. Super at 23 (internal citations omitted). The Third Circuit has also confirmed, albeit in the context of applying Pennsylvania law, that "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." Cox v. Keystone Carbon Co., 861 F.2d 390, 395 (3d Cir. 1988) (applying Pennsylvania law); Griffin, 337 N.J. Super. at 23-24.

Plaintiff's Amended Complaint alleges, in relevant part, that Defendant: (1) professed his romantic feelings for Plaintiff, (2) admitted, generally, to fantasizing about her, (3) made repeated attempts to interact with Plaintiff in the office setting, (4) commented on a picture of Plaintiff with her love interest and asked for a copy of same, and (5) attempted to contact Plaintiff outside the office via telephone calls, e-mails, text messages and voice-mail messages. Taken as a whole, such conduct – alone – simply does not rise to the level of outrageousness necessary to maintain a claim for intentional infliction of emotional distress under New Jersey law. See, e.g., 49 Prospect Street Tenants Ass'n v. Sheva Gardens, Inc., 227 N.J. Super. 449, 455 (App. Div. 1988) (finding outrageous conduct where landlord caused tenants to live in a building with no heat or water, with broken windows, infested with vermin, and which had been invaded by squatters because the locks were broken). Although the Court, again, need not proceed in its analysis, for the sake of completeness, the Court will assess the final prong challenged by Defendant Cobb.

3.   Prong Four

With respect to prong four, which requires that the emotional distress suffered by Plaintiff be "so severe that no reasonable man could be expected to endure it,"[6] Defendant argues that Plaintiff's reaction to Defendant's actions fails to meet this threshold.

"Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so, including ... posttraumatic stress disorder." Taylor v. Metzger, 152 N.J. 490, 515 (1998) (quotation omitted). Generalized allegations of aggravation, embarrassment and loss of sleep are insufficient to support a claim for severe mental distress. See, e.g., Buckley, 368-69 (" His complaints amount to nothing more than aggravation, embarrassment, an unspecified number of headaches, and loss of sleep. He does not describe the frequency of the headaches, or their

length or intensity.") (internal citations omitted).

Plaintiff's Amended Complaint alleges that "Cobb's actions directly caused plaintiff's mental distress and anxiety." (Am. Compl., ¶ 37). It is also alleged that, as a result of Cobb's actions, Plaintiff could not return to work (Id., ¶ 15). Since leaving the company, Plaintiff claims that she has become depressed and is now seeing a therapist. (Id., ¶ 24). Given such allegations, which suggest that Defendant's conduct may have impacted Plaintiff's day-to-day activities such that she has had to seek professional treatment, the Court finds that the fourth prong of the Buckley test has been sufficiently pled at this time. See, e.g., Taylor, 152 N.J. at 515 ("Dr. Fox's diagnosis that plaintiff suffered post-traumatic stress disorder permits a rational factfinder to conclude that she suffered severe emotional distress."); Lascurain v. City of Newark, 349 N.J. Super. 251, 280 (App. Div. 2002) (finding no severe mental distress where there was no "dramatic impact" on plaintiff's everyday activities and where plaintiff sought no regular psychiatric counseling).[7]

## IV.    Conclusion

Based on the reasons set forth above, Defendant's motion to dismiss Count III of Plaintiff's Amended Complaint is **granted**. Plaintiff's intentional infliction of emotional distress claim is hereby dismissed without prejudice. Plaintiff has thirty (30) days in which to file an amended complaint to cure the pleading deficiencies in this claim, to the extent they may be cured. Plaintiff's failure to do so will result in dismissal of this claim with prejudice.

An appropriate Order accompanies this Letter Opinion.

/s/ Jose L. Linares
United States District Judge

[1] For purposes of adjudicating the pending motion to dismiss, the allegations contained in Plaintiff's Amended Complaint are presumed to be true. See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996).

[2] Although the Amended Complaint indicates that this Court's jurisdiction is premised on 28 U.S.C. § 1331, it appears that such is a typographical error inasmuch as the Amended Complaint goes on to state that this Court has jurisdiction over the instant matter "based on the diversity of citizenship of the parties and [the] jurisdictional amount in excess of $75,000." See Am. Compl., ¶ 5. Thus, this Court's jurisdiction is actually premised on 28 U.S.C. § 1332.

[3] Since this Court presently exercises its diversity jurisdiction over the Amended Complaint, the law to be applied is that of the forum state – New Jersey. See, e.g., Am. Cyanamid Co. v. Fermenta Animal Health, 54 F.3d 177, 180 (3d Cir.1995).

[4] Buckley, 111 N.J. at 366.

[5] This Court decides whether such emotional distress can be found, as a matter of law. The jury ultimately decides whether it has in fact been proven. See Buckley, 111 N.J. at 367.

[6] Buckley, 111 N.J. at 366.

7 Defendant also urges the Court to dismiss Count III on the basis that Plaintiff's reaction was not that of a reasonable person under the circumstances. Although Defendant is correct in noting that "people cannot recover for idiosyncratic emotional distress that would not be experienced by average persons," Taylor, 152 N.J. at 516, the Court finds that any such determination – as to whether a rational factfinder could find that Defendant's conduct would have caused severe emotional distress to an average person – would be premature at the motion to dismiss stage. See, e.g., Scheuer, 416 U.S. at 236 (explaining that the relevant inquiry at the motion to dismiss stage is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be given an opportunity to offer evidence in support of their claims).